Counsel, can you hear us? Yes, Your Honor. All right. Counsel for Appellate, please proceed. Thank you, Your Honor. May it please the Court, my name is Tillman Breckinridge for the Plaintiffs. Plaintiffs have established an injury in fact based on both direct present injuries and injuries related to potential future identity fraud concerns. I'd like to focus on the first because the direct present injuries are a direct course to reversal on whether the plaintiffs have established an injury in fact based on clear Supreme Court precedent. The District Court and Illuminate missed the vote on present injuries because they assume, based on cases about financial identity theft, that Social Security numbers and bank account information are the only forms of sensitive information. That's plainly untrue. It's easy to imagine highly sensitive information such as a person's STD health status or credit worthiness that is highly offensive to lose control of. We don't have to... Counsel, may I ask you this? You seem to argue on your appeal that the limitations articulated in Spokeo and TransUnion only apply when a plaintiff pursues a federal statutory claim. Why isn't that argument waived? I don't see where you raised it below. Did I miss it? No, Your Honor. That specific argument wasn't raised below, but that's also not what we're arguing here. To the degree that's a relevant argument, would you agree that's waived? I wouldn't agree that it's necessarily forfeited. But nonetheless, the discussion of whether or not the application of statutory claims with really more background for how kind of out of left field it is in this case to then determine that there was no concrete injury given the fact that there's no federal statute at issue. And that's really been the focus of standing cases in the Supreme Court. But nonetheless, the court doesn't need to reach any of that in this case because we've articulated injury in fact based on common law injuries directly. And help me with this. Are you talking about the tort of inclusion upon seclusion? I mean, inclusion upon seclusion. Is that right? Intrusion upon seclusion, sir, Your Honor. Yes. And you believe that you pled such a common law tort before the district court? Yes, Your Honor. It's in the complaint in count four of invasion of privacy. But even if we hadn't, we pleaded the injury. And that's really what's at issue here, not necessarily pleading the entire cause of action but pleading the injury. So basically, if you have this old tort basically, and you don't indicate what the elements of the tort are and you don't claim those, but you claim that the injury that would come from that, that's enough under TransUnion and Spokane for standing? Well, that's enough to establish a concrete injury in fact. The other elements of standing it's not enough for, but those are not an issue here. Okay. Well, let me ask you this in terms of a concrete injury in fact. Let's say, arguendo, that you pled this. Tell me in what way these folks, the students, were injured. You got their grades, their disciplinary histories, accommodation information that was potentially compromised. How were they harmed? And in fact? Well, they were harmed in fact in the same way that there's an injury and intrusion upon seclusion in so far as their private information became known and they lost control of it. And so as the California Supreme Court stated in Hernandez and stated in Shulman, there is an inherent injury there. Just like in trespass case, there's injury in fact just by someone coming on one's property even if they don't actually disturb anything on the property. You don't have to cut down a tree or break something at someone's house for there to be an injury with trespass. It's just the measure of the injury of having been intruded upon in that way. So if I understand you correctly, you're saying that based upon the tort that you rely upon, that any potentially confidential information that is out there, regardless of whether anybody ever uses it, regardless of whether it would be confidential or would be harmful, that in and of itself constitutes enough of a harm that you've met the standing requirement. Is that correct? It constitutes enough of a harm. Any confidential information that is particularly sensitive would then meet the standard required for establishing a concrete injury in fact. In this particular case, if I understand the facts correctly, let me just get my notes here. I want to say this correctly. It seems to me that lots and lots of time has passed since this information was taken and nothing seems to have happened with it. And I'm wondering how that constitutes an injury. Oh, here it is. It's been three years since the hack. There have been no requests for the data on the dark web and the data has not been sold. There was a ransomware attack. There's criminal activity. But aside from that, what's the harm? Who's been harmed by this? Well, Your Honor, every student who lost private information in this hack has been harmed. Does it matter the nature of the private information? Yes, the nature of the private information does matter. If it's completely nonsensitive information, then this would at least be a closer case. But given the incredible sensitivity of the information here, grades, disability. Why would that be information of that nature? That's routinely requested by employers. It's routinely requested by people when you apply to college or other things. Those are routinely requested. Why is that confidential information? Well, it's confidential information because they are requested of the person who actually owns that information. So that person has to then give it over. So that person has control over the information. It's still very sensitive information as recognized in federal statutes, such as FERPA. Counsel, in the data breach context, what is your strongest case authority to support your position that the mere taking of the information constitutes the injury, the mere existence of the information constitutes the injury? What is your strongest case in the data breach context? Well, there would probably be two that I would go to. Number one would be Horizon Healthcare in the Third Circuit. And then here in the Home Circuit, there would be NIAB. So with NIAB, you have a situation where Capital One just went in, obtained credit reports on people without any authorization or anything like that. There's no indication that they disclosed any information. There's no indication that they actually did anything with the information. But this court recognized that the harm there of them taking the credit information was akin to the harm in intrusion upon seclusion. Well, that would be true if you were suing the person who actually took the information. But you're suing the people who held the information. So that case isn't really on point, is it? No, it's completely on point for the injury, Your Honor. And that's what we're here about. We're here about them being the same injury. You would have a different argument if you were suing the people who actually breached the confidentiality of the information because the Illuminate had the information with permission. Well, I would disagree with that premise, Your Honor. Really? Yes, for reasons stated. Do you disagree with the notion that Illuminate was permitted to have the information? Yes, Your Honor. So on page 6 of our opening brief, there are facts stated that I can't address here because it's under seal because Illuminate has determined that that information is sensitive and confidential. Did you make the argument to the district court that Illuminate did not have permission to store the information? No, Your Honor. That wasn't an issue that was relevant in the district court. So we never had to address it. Because in the end, like I said before, it's not relevant to the issue of whether or not there's actually injury. Well, it's relevant if you say that NAYAC is a similar case because it's not similar facts. Well, Your Honor, I suppose I'll have to disagree with you on whether it's similar facts on the injury. Okay. But even then, you still have Horizon Healthcare, which if you're looking for similar facts in that respect, in Horizon Healthcare, the company that had the information was the defendant in that case where a laptop was stolen. And the Third Circuit recognized that the injury at issue was a privacy injury that is redressable in federal court. But that involved negligence on the part of the company, did it not? Yes, Your Honor. And here there is gross negligence on the part of the company as stated at page six of the opening brief. Yes. So just to pursue that or make sure I understand that. So let's take what would normally be pretty sensitive information, which is disability status and the particulars of the disability. And as I understand it, that information was provided, but under a promise of confidentiality. And then through the gross negligence of Illuminate, it became available to the hacker. Do I have that right? That's absolutely right, Your Honor. Yeah. So the very fact that they were hacked by this ransomware people, that in and of itself constitutes from your perspective an actionable, it was actionable on what they did, right? By not protecting from the ransomware people? Well, it depends on how you define actionable. There's certainly more to the claims than that, more required to the claims than that. To prove negligence, we have to prove that they had done something negligent and things like that. But as far as whether or not there's a concrete injury, in fact, which is the issue here, yes, all it takes is that there was a data breach of sensitive information that a person has a common law right to control. And that's what happened here. So for that narrow issue that we're here for, of whether there's a concrete injury, in fact, those three elements establish an injury, a concrete injury, in fact. But you'd still have to establish that it's a particularized injury and things like that. But that, of course, is obvious here that it is a particularized injury. The plaintiffs are the people who own the information. It's not some random person off the street or anything like that. What do we do with the concept that I think the district court went off on, which was that these were conclusory allegations on your part about this information being available? Being mindful that I would like to keep a couple of minutes for rebuttal. That's fine. My response to that is just that the district court was wrong to say it's conclusory when we've provided a myriad facts supporting the conclusion because the conclusion was that they were injured. But then we provided all the facts establishing that this is sensitive and that sensitive information was taken. And the sensitivity of the information, particularly given all the statutory protections of that information. So I'm not sure where the district court came to the conclusion that it was conclusory to allege an injury in fact, a concrete injury in fact. Well, but you talked about a number of the ways that the information could be used to injure the students in the future. I think that's what the district court was talking about is being somewhat speculative about what some of the potential uses of the information could be. And as Judge Smith said, that hasn't materialized. Well, Your Honor, I disagree with that concept by the district court, but that's only relevant to the second set of injuries, which is the injuries related to the potential future injuries. That is completely irrelevant to whether there are present injuries involving the invasion of the privacy of these students. So are you no longer standing on the allegations regarding potential future injuries? No, we are, Your Honor. That's our second argument in the briefing, establishing that there is definitely an imminent threat and risk here. How can it be imminent if all of this time has passed and nothing has materialized? Well, Your Honor, it depends on, you know, the record kind of being stable since or not supplemented since the complaint. In the end, it can be imminent insofar as that the risk is still very substantial and it sits in grand importance. But on the flip side of that, as far as nothing having materialized yet, we pointed out in our complaint that it often takes years for particularly children's information to be used against them. So that the allegation that it takes years for information to be used against people was something this court credited in Zappos and recognize that that's an important allegation establishing a future injury. Maybe I'm misremembering, but correct me if I'm wrong. I think you allege that because of that ongoing threat, some of the members of the class have gone out and had to expend money to get better protection than the protection that Illuminate should have provided. That's right, Your Honor. Some of the members of the class with this non-speculative risk of future injury had to go out and get monitoring protection. That said, paragraph 160 of the complaint, page ER 168. But that has not been credited as an injury in data breach cases, has it? Having to get credit monitoring services, has that been credited as an injury in data breach cases? I'm not aware of any specifically, but I'm also not aware of any cases saying that that can't be an injury. And going back to your question, Your Honor, about whether or not there have been injuries. There is the JMV Illuminate case that's currently in the California Supreme Court, the California Court of Appeal did recognize there that there was an allegation by JM that his information had been sold and used. All right. Thank you, counsel. We'll give you a couple of minutes for rebuttal. Anderson. Good morning, and may it please the court. Devin Anderson on behalf of Illuminate Education. The district court here correctly found that these plaintiffs have not shown that they have standing to pursue their claims. I think three key factors drive this conclusion. First, the alleged injuries are entirely hypothetical. There are no allegations that these plaintiffs, let alone anybody else, has experienced bullying, spear phishing, blackmail, identity theft, or any of the harms that plaintiffs have caused. As a student that I suffer from a severe disability, let's say schizophrenia, but it's controlled by medication. Nevertheless, even within a university, that would be kept highly, highly confidential. And so the argument, as I understand it from your adversary, is when some third party having no right to that information gets it, that in itself is sufficient injury. Two points in response to that, Judge Rakoff. I think the first point, and the dispositive point here, is no plaintiff has made that sort of allegation. And at the motion to dismiss stage here, we're not talking about some hypothetical class. We're talking about the standing of these plaintiffs to bring these claims. But setting that aside, let me address kind of the more overarching doctrinal point, which is the transunion test says we have to look to see whether plaintiffs have pointed to an intangible harm, which can be concrete, which is what transunion held. If it has a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts. Here, plaintiffs sort of bounce back and forth before the district court. The most that they may be argued was public disclosure of private facts. On appeal, they've now pivoted to this intrusion upon seclusion. I don't think that was squarely presented to the district court. Let's assume you're right about waiver. That would be the end of that. But let's assume now that it wasn't waived. Sure. So let me take on intrusion upon seclusion. I think this court's decision last year, I guess we're 25, two years ago or a year and a half ago in the Phillips case, lays out how we approach this test. And it builds on, frankly, the court's prior work in the Facebook Internet tracking case and the Patel case and in the NIAB case about how we do this common law comparator analysis. So for intrusion upon seclusion, the essence of the harm is that there's somebody, the defendant, has intentionally intruded upon the solitude or seclusion of the private affairs of the plaintiffs. And that intrusion has to be highly offensive to a reasonable person. That's how this court has articulated the comparator framework in the cases I just discussed. Here, however, the allegations that plaintiffs have made are fundamentally incompatible with the essence of the harm arising from the tort of intrusion upon seclusion. Here there was no intentional intrusion by Illuminate. We were the victim of a cyber attack. So the question on the transunion question is, is gross negligence sufficiently related to that common law contention that it can substitute for intent? So, Your Honor, I don't think it is. And let me explain why I think that. I think the essence of the tort, if you look at the restatement, the California Supreme Court's decision that my friend on the other side referenced Fernandez versus Hillsides, does a very thorough job of describing what the harm associated with intrusion upon seclusion looks like. And it looks a lot like the cases this court dealt with in Patel and in Facebook tracking where you had the defendant, let's take Facebook Internet tracking case. You had the defendant in that case surreptitiously and contrary to the representations it had made to its users, recording every web page that that user was visiting once it left Facebook. And basically sitting on the shoulder of that plaintiff as those plaintiffs went around visiting a bunch of different sites on the Internet. And in that case, this court found that the harm there was closely or bore a close relationship to the harm associated with the tort of intrusion upon seclusion. I think the key distinction here, though, is that there is no allegation beyond negligence and maybe even gross negligence. I don't think gross negligence is actually alleged here, but I'm going to grant you that, Judge Rakoff, for purposes of the hypothetical. There are no, I'm not aware of any cases, certainly my friend on the other side hasn't pointed to any, in which a court has sustained an intrusion upon seclusion claim in the presence of negligent activity by the defendant, as opposed to affirmative activity by the defendant. Affirmative activity is what was present in those cases that we just discussed. And indeed, plaintiffs here haven't even alleged facts showing that their personal data was ever opened, viewed, or otherwise intruded upon. As Judge Smith talked about in the colloquy with my friend on the other side, the allegation here is of a particular style of attack against Illuminate, in which Illuminate is extorted. And the allegations and the complaint, I would encourage the court to review those allegations at 3 ER 136 through 138, that describe the interactions between the threat actor and Illuminate. I think the nature of this attack distinguishes it pretty significantly from some of the cases, like this Neiman Marcus case, Ramejas, that my friend on the other side points to, where the court in that case is like, you know, why else would someone break in and steal this data if not to use it in the future? Well, we have an answer to that question in this case, namely to extort money from my client Illuminate, which they did. And there's been no further instances or examples of that data being used in any way, even granting the point that the complaint sort of froze in time in June of 2023 when it was last filed. That complaint was filed 18 months after the incident and with the benefit of substantial discovery from my client, discovery that you see scattered throughout that complaint. And I think that those facts, talking about the nature of the attack, the absence of any allegations showing that this data has been misused in any way, or any of the ways that the plaintiffs hypothesize about, and then the nature of the data itself are the three factors that really support the way the district court thought about this. Although some of the data at issue certainly may be sensitive for some individuals in some ways, plaintiffs have not shown or alleged that they have data that was given to Illuminate that is the sort of data that this court has previously found gives rise to an injury. So I've talked a little bit about intrusion upon seclusion. Counsel, let me just be sure I understand what you're saying. In other words, even if there is a cause of action for disclosing or due to gross negligence, having someone discover sensitive information, your claim, I gather, is that the individual plaintiffs in this case have not alleged that they personally had particular types of sensitive information disclosable. Is that correct? That's correct, Your Honor. And it's an unpublished decision, but we submitted it via our 28-J submission. This court had a decision in Greenstein about six or seven months ago that I think is quite similar and instructive on this issue. And in Greenstein, the claim there related to identity theft, and the plaintiffs had claimed that they might have had, for example, driver's license numbers in that case as part of the set of data that had been taken by the threat actor. And this court said that wasn't enough to say, well, maybe our data might be in that set. And that's entirely consistent with standing precedents from this court and the Supreme Court going back a long ways. So I don't think that the plaintiffs in this case have alleged an action or a valid intangible injury. We talked a little bit about intrusion upon seclusion. There is some stray references to the tort of defamation and the injury associated with defamation in plaintiffs' briefs, and that's actually the one that they argued below. You can sort of squint and see that argument. They said they were like the portion of the class for which standing was found in the transunion case. I don't think that's correct at all, and I think Judge Selma rightly rejected that argument. Recall that the Supreme Court's analysis in transunion found that the essence of an injury that was a close analog to the common law tort of defamation was the dissemination of a false statement. Here you don't have either of those. There's no allegation that the information that Illuminate had from plaintiffs' schools was false, and there's certainly no allegation that Illuminate disseminated that in the way that transunion was alleged to have disseminated false terrorist designations as to that subset of plaintiffs for whom there had been evidence that transunion had sent those to other authorities. That to me gets back to Judge Rawlinson's question to your friend. The claim here is not brought against the ransomware attackers. It's brought against the victim of the ransomware attack. There was no intention on the part of Illuminate to have this information put out there. What role, if any, does that play in our analysis? I think it plays an important role. Your Honor, I think it does go to the question of whether plaintiffs have made out an injury analogous to the tort of intrusion upon seclusion. The answer might be different if they had sued the threat actor as opposed to Illuminate. I think that the defendant, of course, matters. When we're looking at standing, we're looking at the standing of these parties to bring these claims against this defendant, not whether some hypothetical claims might exist against some defendant in the future. I think that really undermines plaintiffs' case for an intangible harm associated with the tort of intrusion upon seclusion. I also think the nature of the attack, as Your Honor described it, really undermines the claim that plaintiffs faced a substantial and imminent risk of future harm. Plaintiffs have never really explained exactly what form that harm might take or brought that home to themselves. This is why I think Judge Selna was correct to say, look, you can talk about all these potential harms that might happen in certain fact patterns, but without the connective tissue to these plaintiffs and the data that they had and this particular attack, that truly is speculative. I think Judge Selna got that exactly right when he looked at the allegations in this complaint. If you look at this court's prior decisions in the Zappos case and in the Krotner case, those cases, number one, dealt with identity theft, which is something that plaintiffs really have, I'm not quite sure if they're still pursuing it, but they seem maybe to have dropped those arguments here on appeal. And in two, those cases involved information that is known to be associated with and used to commit identity theft, and there were examples of identity theft that were at least temporally related to the attack that occurred in that case. So I think plaintiffs have basically abandoned any of their arguments, any other types of injuries beyond the intangible injury associated with interest upon seclusion, and that I think they didn't even argue below, or the risk of future harm. I think both of those are insufficient on these allegations as they pertain to these specific plaintiffs. If there are no further questions by the court on standing, I want to say just a few general points about the merits, and then I'll otherwise rest on my briefs unless the panel has any questions. The first point that I would make is that even if the court finds that these plaintiffs have satisfied the standing inquiry, that's not at all dispositive of whether plaintiffs have alleged a cognizable injury as a matter of the state law claims that they bring. In fact, this court issued memorandum dispositions in Krotner. Krotner they found standing but then dismissed on state law grounds. Same thing with Prushniki. For example, a risk of future harm is not a cognizable harm under tort and contract law. Emotional distress is also not recoverable in a garden variety negligence case. We've cited cases to that extent in our briefs. Second, and Judge Rollinson alluded to this, Illuminate contracts with schools and school districts. It doesn't deal with the individual students. It's not contracting with them. It's not interacting with them. And that lack of relationship between plaintiffs and Illuminate precludes a great many of plaintiffs' claims. It goes to the availability of the economic loss doctrine for the negligence claims. It shows the lack of mutual assent or a third-party beneficiary status for contract claims. It undermines their breach of confidence claim where there hasn't been a conveyance from plaintiffs to Illuminate. And it undermines any examples of causation or reliance when it comes to consumer protection statutes or fraud claims because there's no connection between Illuminate's conduct and actions that plaintiffs took or did not take. If there are no further questions from the panel, we would ask that the Court affirm the dismissal of plaintiffs' claims. Counsel, let me just ask you this following on what you just said about the third-party beneficiary concept. That, of course, relies upon a reasonable expectation of what might happen. In this particular case, I gather there are no allegations that the basically you've got a third-party beneficiary issue because it was reasonably expected that someone would basically, an attacker, would get this information and take it out. Is that right? If you're talking about the breach of contract theory, their breach of contract theory relies upon the contracts that Illuminate has with the school districts. And they want to say school districts are obviously serving students, and so we must be third-party beneficiaries. But they actually attach the one agreement that my client has with the New York Department of Education. This is at 3ER85. And that agreement has very specific language that limits the benefits of the agreement to the parties. And in this Court's decision in No v. BMW, that's precisely the sort of language that the Court found did not give rise to valid third-party beneficiary status. If there are no further questions, I thank the Court for its time and would ask the Court to affirm the decision below. Thank you, Counsel. Let's have two minutes for rebuttal. Two minutes. Thank you. Rebuttal? Thank you, Your Honor. I'd like to take my time to correct a few mischaracterizations made in Illuminate's argument. But specifically, it is not true that we haven't alleged that the named plaintiffs gave data that's sensitive. Right there in the complaint, numerous paragraphs establishing sensitivity. Let's take, for instance, Ms. Vitro stating that the complaint statements, I believe, starting at paragraph 214, stating that Ms. Vitro gave information about her child's disability to the school district and the school district had that information and then received a letter from Illuminate indicating that that information may have been taken. And then with respect to grades and free lunch status and other sensitive information like that, of course the school district has that information. It seems kind of judicially noticeable that the school district has the information that it has their grades. Another misstatement I'd like to correct is the third-party beneficiary question, the notion that the students are not beneficiaries of this contract. The California Court of Appeal has established in JMV Illuminate, so Illuminate is the defendant in that case, that the students are the beneficiaries of the contract and the contract does endure to their benefit. There is some specific discussion on that in the last page of the reply brief that can direct you directly to the page in JMV Illuminate where the court is 100% clear. The California Court of Appeal is 100% clear that the students are the people who are intended to be protected by the privacy provisions and the other provisions of the contract that I cannot discuss because of the seal. And so, therefore, the students are the people who were injured. The students are the victims of this data breach, and unless there are any further questions. I do have one question, forgive me. Please, as long as you have questions, we'll go forward. So what do you say in response to your adversary's argument that the analogous common law tort is an intentional tort and here there was no allegation of intent on the part of Illuminate? Two things, Your Honor. Number one, intent doesn't get to whether there was an actual injury or a concrete injury. It just gets to the merits of whether or not we can prove that claim, but that claim is not essential to every cause of action that we have. And number two, the standard isn't that we have to meet every single element of the common law injury. It's to a certain injury that is akin to a common law injury. Here it is akin to the common law injury of intrusion upon seclusion. And as we stated below, intrusion upon seclusion, disclosure, private fact, and defamation, because there was a disclosure here. And Illuminate disclosed to cyber criminals this information. And in defamation, there's no element requiring, establishing that people intended to do bad things with the information. It's just that there has to be a disclosure of information. And so here we have a very clear injury that has three common law analogs for a present direct injury. When that information was taken, very sensitive private information of a plaintiff was taken by cyber criminals. Justin, if you had a question. I'm okay with it. I'm okay. Thank you. All right. Judge Rakoff, anything else? No, that's fine. Thank you. All right. Thank you to both counsels for your helpful arguments. The case to argue is submitted for decision by the court.
judges: RAWLINSON, SMITH, Rakoff